NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0435n.06

Case No. 23-5790

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Oct 30, 2024
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff - Appellee, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| | ) |
| GROVER VAUGHN., | ) |
| Defendants - Appellant. | ) OPINION |
| | ) |
| | ) |

Before: GIBBONS, WHITE, and MURPHY, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Grover Vaughn challenges the constitutionality of 18 U.S.C. § 922(g)(1) as applied to him under the Second Amendment[1] and facially and as applied to him under the commerce clause of the United States Constitution. He contends that he is a non-dangerous individual who may not be constitutionally disarmed and the activity underlying his § 922(g)(1) conviction does not involve interstate commerce. Following this Circuit's precedent, we reject both of Vaughn's arguments and hold that § 922(g)(1) is facially constitutional and constitutional as applied to Vaughn.

**I**

On the morning of December 15, 2019, Vaughn, armed with a Ruger 9mm pistol, observed two individuals breaking into vehicles on his street. Vaughn attempted to confront the individuals but, in response, they walked off—away from Vaughn—towards a dark SUV. When one of the

---

[1] Vaughn initially brought a facial challenge to § 922(g)(1) before later dropping the argument in response to our decision in *United States v. Williams*. 113 F.4th 637 (6th Cir. 2024).

individuals reached the back of the inside of the SUV, he raised his arm towards Vaughn in a way which, according to Vaughn, appeared to indicate that he was armed. Vaughn shot several rounds at the individual who had raised his hand as both individuals fled the scene in the SUV. Vaughn then returned to his residence. Later in the day, officers responded to a vandalism complaint near the scene of the incident stemming from bullet damage to several cars. While investigating the complaint, the officers noted a trail of bullet casings near Vaughn's home and took Vaughn in for questioning. While being questioned, Vaughn admitted to the earlier shooting. The government later executed a search warrant at Vaughn's address and recovered a Ruger 9mm pistol and 15 rounds of live 9mm ammunition in Vaughn's bedroom.

Importantly, Vaughn was a felon with a substantial record during the time he possessed the firearm. In 2002 he was convicted of aggravated robbery. In 2008 he was convicted of possession of marijuana. In 2010 he was convicted of being a felon in possession of a handgun and possession of marijuana with intent to sell. In 2013 he was convicted of disorderly conduct. In 2014 he was convicted of robbery. In 2016 he was convicted of failure to appear in the robbery case. Thus, on November 9, 2021, Vaughn was indicted under 18 U.S.C. § 922(g)(1) for knowingly possessing a firearm as a felon. Section 922(g)(1), in relevant part, states:

> It shall be unlawful for any person . . . who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).

The gun in question was not manufactured in the state of Tennessee and at some point had crossed state lines.

On March 22, 2023, Vaughn filed two motions to dismiss the indictment. The first motion argued that § 922(g)(1) violates the commerce clause and is an unconstitutional overreach of Congress's power. The second motion argued that § 922(g)(1) is facially unconstitutional and unconstitutional as applied against Vaughn under the Second Amendment. Both motions were denied by written order of the district court on May 10, 2023. *United States v. Vaughn*, No. 2:21-cr-20250-SHL, 2023 WL 8287564 (W.D. Tenn., May 10, 2023). The district court held that because the gun had been shipped across state lines the application of § 922(g)(1) against Vaughn was a valid exercise of Congress's commerce powers, *id.* at *6, and that Vaughn, as a convicted felon, falls outside the scope of the Second Amendment's protection, *id.* at *5.

Vaughn pled guilty on May 26, 2023, with a written plea agreement that reserved his right to appeal the district court's decision to deny his motions to dismiss. Vaughn so appealed. After initial briefing was complete, we ordered the parties to file supplemental briefs because of our recent Second Amendment case *United States v. Williams*. 113 F.4th 637 (6th Cir. 2024).

## II.

We review the denial of a motion challenging the constitutionality of a federal statute de novo. *United States v. Loney*, 331 F.3d 516, 524 (6th Cir. 2003).

## III.

Vaughn reiterates his argument that § 922(g)(1) is unconstitutional as applied to him because it infringes on his Second Amendment rights and is also both facially unconstitutional and unconstitutional as applied to him because the statute is an overreach of Congress's limited powers under the commerce clause. We reject Vaughn's arguments. First, because Vaughn failed to carry his burden to prove that he was not dangerous, history and tradition indicate he could be disarmed under the Second Amendment. Second, because § 922(g)(1) carries with it a jurisdictional hook

that any prohibited firearm must move in or affect interstate commerce and Vaughn's weapon was manufactured outside the state in Tennessee, § 922(g)(1) is both facially constitutional and constitutional as applied to Vaughn under the commerce clause.

## A.

In our recent *Williams* case we held that felons are among "the people" protected by the Second Amendment, but that "our nation's history and tradition demonstrates that Congress may disarm individuals they believe are dangerous" and thus "most applications of § 922(g)(1) are constitutional." 113 F.4th at 657. And because most applications of § 922(g)(1) are constitutional, § 922(g)(1) is facially constitutional. *See Williams*, 113 F.4th at 657; *see also, e.g.*, *United States v. Dorsey*, No. 24-5129, 2024 WL 4250319, at *1 (6th Cir. Sept. 20, 2024).

But *Williams* left open the possibility for a defendant to succeed on an as-applied challenge so long as he satisfies his burden to prove that he himself is not dangerous "and thus falls outside of § 922(g)(1)'s constitutionally permissible scope[.]" 113 F.4th at 657. But certain convictions, like aggravated robbery—which both the defendant in *Williams* and Vaughn possess—are highly probative and, alone, would almost certainly be sufficient to conclude that the defendant presented a danger to the public such that they could be constitutionally disarmed. *See id.* at 662. What is more, not only does Vaughn hold a conviction for aggravated robbery, but Vaughn has also been convicted for another robbery, possession of marijuana, intent to sell marijuana, and a failure to appear for his second robbery conviction.[2] In the face of such overwhelming evidence of dangerousness based on two robberies, Vaughn presents no countervailing evidence to

---

[2] In *Williams* we noted "that courts may wish to consider information beyond criminal convictions when assessing a defendant's dangerousness." 113 F.4th at 658 n.12. The fact that Vaughn's § 922(g)(1) conviction resulted from an incident where he shot at an individual certainly would lend to a showing of his dangerousness. But, similar to *Williams*, Vaughn's "criminal convictions are sufficient to resolve this case." *Id.*

demonstrate to the court that he is not dangerous.[3] Ultimately, we must reject Vaughn's as-applied challenge to § 922(g)(1).

However, in light of *Williams*, the district court erred in holding that Vaughn, as a felon, is outside the bounds of the Second Amendment. *See id.* at 649 ("Nothing in the Second Amendment's text draws a distinction among the political community between felons and non-felons[.]"). We therefore reject the district court's conclusion that the Second Amendment did not apply to Vaughn because he was a felon, but we otherwise affirm insofar as Vaughn has not satisfied his burden under *Williams* to prove he is not dangerous. *See Allen v. Diebold, Inc.*, 33 F.3d 674, 676 (6th Cir. 1994) (noting the authority of this court to affirm on alternative grounds not reached by the district court).

**B.**

The powers of the United States Congress are limited to those powers explicitly delegated to it by the text of the United States Constitution. *United States v. Lechner*, 806 F.3d 869, 876 (6th Cir. 2015). One such power is the "commerce clause" which gives Congress the authority "[t]o regulate Commerce with foreign Nations, and among the several states[.]" U.S. Const. art. I, § 8, cl. 3. In *United States v. Lopez*, the Supreme Court identified three categories of activity Congress may regulate pursuant to its power under the commerce clause. 514 U.S. 549, 558 (1995). First, Congress may regulate "the use of the channels of interstate commerce." *Id.* Second, Congress may "regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate

---

[3] Vaughn argues that he possessed the gun only for self-defense and is not treasonous. But this alone is not sufficient to make out an individualized showing that Vaughn, himself, is not dangerous. Particularly so given that in *Williams* we noted that robbery traditionally was an extremely serious crime which in early American history was punishable by death, creating a potentially "irrebuttable presumption of dangerousness." *Williams*, 113 F.4th at 658. Merely owning a gun for self-defense and not being treasonous is not enough to overcome such a high presumption.

activities." *Id.* Third, Congress may regulate activities that "hav[e] a substantial relation to interstate commerce, *i.e.*, those activities that substantially affect interstate commerce[.]" *Id.* at 558-59 (citation omitted). Having laid out these three jurisdictional buckets, the Supreme Court invalidated 18 U.S.C. § 922(q)(1)(A), which made it a federal offense to possess a firearm at school, noting that it lacked any sort of jurisdictional hook linking the crime to interstate commerce. *See id.* at 561-62, 568.

Soon after *Lopez*, our circuit decided *United States v. Chesney*. 86 F.3d 564 (6th Cir. 1996). In *Chesney* we noted that "[c]ourts uniformly have rejected [commerce clause] facial challenges to § 922(g)(1) because § 922(g)(1) contains a jurisdictional provision that requires the government to prove that the firearm was possessed 'in or affecting commerce.'" *Id.* at 568. What doomed § 922(q) in *Lopez* was its lack of a "jurisdictional element." *Chesney*, 86 F.3d at 569 (quoting *Lopez*, 514 U.S. at 561). But § 922(g)(1) makes it a requirement for a gun to have moved in or affect interstate commerce to sustain a conviction, providing the very jurisdictional hook necessary under the commerce clause. *Id.* Every other circuit that has been confronted with this issue has followed the same analysis, and all have come to the same conclusion.[4] Thus, following our binding precedent, we again must hold that § 922(g)(1) is facially constitutional.

Vaughn also argues that § 922(g)(1) is unconstitutional as applied to him because we should read the statute to require a temporal link between possession and the "in" or "effect" of interstate commerce; i.e., § 922(g)(1) is only constitutional for robbery of a store or a crime across state lines. But our binding precedent holds that Congress appropriately regulates under the

---

[4] This includes every circuit except the DC Circuit. *See United States v. Joost*, 133 F.3d 125, 131 (1st Cir. 1998); *United States v. Santiago*, 238 F.3d 213, 217 (2d Cir. 2001); *United States v. Leuschen*, 395 F.3d 155, 160-61 (3d Cir. 2005); *United States v. Bostic*, 168 F.3d 718, 723 (4th Cir. 1999); *United States v. Alcantar*, 733 F.3d 143, 146 (5th Cir. 2013); *United States v. Wilson*, 159 F.3d 280, 286 (7th Cir. 1998); *United States v. Joos*, 638 F.3d 581, 586 (8th Cir. 2011); *United States v. Jones*, 231 F.3d 508, 514-15 (9th Cir. 2000); *United States v. Bayles*, 310 F.3d 1302, 1308 (10th Cir. 2002); *United States v. Dupree*, 258 F.3d 1258, 1259 (11th Cir. 2001).

commerce clause even if the underlying crime did not directly involve interstate commerce. *United States v. Napier*, 233 F.3d 394, 400-01 (6th Cir. 2000); *see also United States v. Thompson*, 361 F.3d 918, 923 (6th Cir. 2004) ("*Napier* concluded that § 922(g) satisfies the modest demands of [] precedent[] because it requires a minimal nexus that the firearm have been, at some time, in interstate commerce." (cleaned up)).  If the weapon previously moved in interstate commerce, which it did here, the commerce clause has been satisfied.  *See, e.g.*, *United States v. Henry*, 429 F.3d 603, 619 (6th Cir. 2005) ("We explicitly held post-*Lopez* that a § 922(g)(1) conviction comports with the Commerce Clause so long as the defendant 'possessed a gun that previously had moved in interstate commerce.'" (quoting *Chesney*, 86 F.3d at 572)); *see also, e.g.*, *United States v. Turner*, 77 F.3d 887, 889 (6th Cir. 1996) (upholding the constitutionality of § 922(g) because it requires the government to prove the felon possessed the firearm in or affecting commerce).  Because the firearm was not manufactured in Tennessee it, of course, had to cross state lines to reach Vaughn.  Therefore, we also reject Vaughn's as applied commerce clause challenge. [5]

**IV.**

Because felons are within "the people" protected by the Second Amendment, we reject the district court's conclusion that the Second Amendment does not extend to Vaughn's conduct.  But we ultimately affirm Vaughn's conviction because he cannot carry his burden to show that § 922(g)(1) is unconstitutional either facially or as applied.

---

[5] Vaughn contends that the Supreme Court authority on this issue, *Scarborough v. United States*, 431 U.S. 563, 566-67, 572 (1977), is merely statutory and, having been written prior to *Lopez*, does not control on the constitutional issue of the commerce clause.  But we, and other circuits, have squarely dealt with this argument before and have reaffirmed the precedential weight of *Scarborough*.  *See, e.g.*, *United States v. McBee*, 295 F. App'x 796, 798 (6th Cir. 2008) (citing Sixth Circuit cases and other cases from sister circuits to conclude that "[t]hese cases-and many others-affirm the constitutionality of the felon-in-possession statute and continuing authority of *Scarborough*.  We thus join the . . . circuits reaffirming the precedential force of *Scarborough*.").